UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JEFFREY WASHINGTON,
       Plaintiff,

 -v.-                  9:08-CV-879 (LEK)

CHARLES LITTLE, C.O.; MICHAEL
HATHAWAY, C.O.; ROBERT GREEN,
C.O.; KORY COPELAND, C.O.; STEVEN
GREEN, C.O.; C. MURRAY, Sgt.,
       Defendants.

---

**APPEARANCES:**             **OF COUNSEL:**

JEFFREY WASHINGTON
Plaintiff, *pro se*

OFFICE OF THE ATTORNEY GENERAL  CHRISTOPHER W. HALL, ESQ.
State of New York            Assistant Attorney General
Attorney for Defendants

LAWRENCE E. KAHN, U.S. DISTRICT JUDGE

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

  Pro se Plaintiff Jeffrey Washington commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated his Eighth Amendment rights. Dkt. No. 1.[1] Plaintiff claims that he was assaulted by the Defendants, correctional officers at Great Meadow Correctional Facility, on October 8, 2005. Plaintiff states that he "filed inmate grievances which were not answered by Great Meadow C.F. officials." <u>Id.</u> at 5.

  Defendants filed a Motion for summary judgment under Federal Rule of Civil Procedure 56 in lieu of an answer. Dkt. No. 19. Defendants seek dismissal of this action on the ground that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. Plaintiff

---

[1] Plaintiff also claims that the Defendants conspired "to deny [him] equal protection of the laws based in part on racial motives . . . " in violation of 42 U.S.C. § 1985. Dkt. No. 1 at 8.

opposes Defendants' Motion. Dkt. No. 24.

For the following reasons, Defendants' Motion for summary judgment is granted.

**II.    DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citing Fed. R. Civ. P. 56(c)); Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir. 2006). All reasonable inferences must be drawn in favor of the non-moving party. See Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted); see also S.E.C.. v. Kern, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not

extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); accord Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

**B.    Exhaustion**

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007); see also Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).[2] A court must first determine whether administrative remedies were available to the plaintiff at the relevant times. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686. If such a remedy existed and

---

[2] These three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap. See Hargrove v. Riley, No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); see also Giano v. Goord, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

3

was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. Macias, 495 F.3d at 41; Hemphill, 380 F.3d at 686.

The Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS") is recognized as an "available" remedy for purposes of the PLRA. See Mingues v. Nelson, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing Mojias v. Johnson, 351 F.3d 606 (2d Cir. 2003) and Snider v. Melindez, 199 F.3d 108, 112-13 (2d Cir. 1999)). The IGP consists of a three-step review process. First, a written grievance is submitted by an inmate to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident. 7 N.Y.C.R.R. § 701.5(a).[3] The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. Id. §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility reviews the IGRC's determination and issues a decision. Id. § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. Id. § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion

---

[3] The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

of these three levels of review may a prisoner seek relief in a federal court. Reyes v. Punzal, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, Sulton v. Greiner, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Defendants claim that they are entitled to summary judgment dismissing the complaint because Plaintiff did not take even the first step in the process to exhaust his administrative remedies. In support of their Motion, Defendants rely on affidavits provided by the Inmate Grievance Program Supervisor ("IGPS") at Great Meadow Correctional Facility (where the alleged incident occurred on October 8, 2005) and at Southport Correctional Facility (where Plaintiff was confined from November 7, 2005 through February 28, 2008). Great Meadow IGPS Brandi White states that after searching the grievance records she did not find any record that Plaintiff filed an inmate grievance regarding an incident occurring at Great Meadow on October 8, 2005. See White Aff. (Dkt. No. 19, Attach. 2). According to Southport IGPS Sabrina Von Hagn, Plaintiff filed three grievances at Southport. See Von Hagn Aff. (Dkt. No. 19, Attach. 3). These grievances addressed Plaintiff's claims that he did not receive his legal work from Great Meadow; that requested medical books and an inhaler had not been provided, and that he was being subjected to racial slurs and other forms of mistreatment. Id. at 6-9.

Plaintiff alleged in his complaint that he filed "inmate grievances" at Great Meadow which "were not answered." Dkt. No. 1 at 5. Plaintiff stated that he could not provide copies of these grievances because his legal papers were taken "while I was under SHU confinement on this incident." Id. In opposition to Defendants' summary judgment Motion, Plaintiff claims, for the first time, that Defendants "conspired with 'Brother' officers [at Great Meadow] to withhold mail and grievances from leaving the SHU area," suggesting that his grievances were not only "unanswered," but were in fact never received by the IGRC. Dkt. No. 24 at 1. Plaintiff again

5

states that he cannot provide a copy of the grievance, claiming that it "was in my personal property that was lost." Id. Plaintiff references the grievance he filed at Southport regarding the alleged loss of his property during his transfer from Great Meadow to Southport in November, 2005. Id.[4] This grievance makes no specific mention of other grievances, but complains of the loss of Plaintiff's "legal work, personal letters and phone book," as well as his "sneakers [and] gold cross." Id. at Ex. A.

Upon due consideration of the record, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to the matters complained of in this action as there is no evidence that any grievances were filed regarding the incidents on October 8, 2005. Plaintiff had administrative remedies available to him at Great Meadow and Southport. It clearly appears that Plaintiff knew how to utilize the grievance system and did in fact file grievances during the relevant time period. As to Plaintiff's unsupported and conclusory assertion that his grievance was intercepted from the prison mail at Great Meadow by unnamed corrections officers engaged in a conspiracy to prevent SHU inmates from submitting grievances, the Court finds that this is not sufficient to create a genuine issue of material fact relevant to this Court's determination of whether Defendants are estopped from asserting the affirmative defense of failure to exhaust or whether "special circumstances" exist which justify his failure to exhaust his administrative remedies. See Giano, 380 F.3d at 675-76.[5] Plaintiff had access to the grievance system at

---

[4] Contrary to Plaintiff's assertion (see Dkt. No. 24 at 1), however, this grievance does not contain an acknowledgment from DOCS that his property was "lost." Plaintiff has not provided any evidence regarding the disposition of this grievance.

[5] This case is clearly distinguishable from Finch v. Servello, No. 9:06-CV-1448, 2008 WL 4527758 *7-8 (N.D.N.Y. Sept. 29, 2008) (McAvoy, D.J.), where summary judgment was denied in light of plaintiff's sworn statement that he requested his housing officer to send a letter to his superiors attesting to plaintiff's repeated efforts to file a grievance.

Southport and, indeed, filed a grievance shortly after his arrival at that facility regarding the alleged loss of his property. This grievance makes no mention of his prior grievances. More significantly, however, Plaintiff did not file any grievances at Southport regarding the October incident, the alleged failure of Great Meadow officials to respond to the grievance which he claims to have filed; or the alleged confiscation of his grievance from the facility mail at Great Meadow.[6]

Based upon the foregoing, Defendants' Motion for summary judgment is granted and the complaint is dismissed due to Plaintiff's failure to exhaust his administrative remedies.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED in its entirety** as against all Defendants; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties.

**IT IS SO ORDERED**.

DATED:   January 27, 2009
         Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[6] See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(k) (stating procedures for grievances filed or appealed after transfer); Santiago v. Meinsen, 89 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2000) (holding that although transfer might render grievance futile it does not excuse failure to exhaust administrative remedies).